UNITED STATES of America, Plaintiff-Appellee,

v.

Doyle A. BOYD, Defendant-Appellant. (Admiralty)

UNITED STATES of America, Plaintiff-Appellee,

v.

H. W. CALDWELL & SONS, INC., Defendant-Appellant.

Nos. 74–1493, 74–1494.

United States Court of Appeals, Sixth Circuit.

June 18, 1975.

Certiorari Denied Jan. 12, 1976. See 96 S.Ct. 776.

H. Fred Ford, Stanley H. Sidicane, Nashville, Tenn., for defendant-appellant in No. 74–1493.

Stanley H. Sidicane, Nashville, Tenn., for defendant-appellant in No. 74–1494.

Charles H. Anderson, U. S. Atty., Nashville, Tenn., Donald R. Kronenberger, Jr., Trial Atty., Stephen F. Eilperin, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before McCREE and LIVELY, Circuit Judges, and ALLEN,* District Judge.

ALLEN, District Judge.

Appellants, Doyle A. Boyd and H. W. Caldwell & Son, Inc., appeal from a judgment entered after a nonjury trial requiring them to pay the United States for its expenses incurred in removing a sunken barge from a navigable portion of the Cumberland River.

In 1963, Boyd, while an employee of Caldwell, purchased on behalf of his employer, Barge CB–482. Subsequently, Boyd left Caldwell's employment but was allowed to use the barge for his own purposes with the understanding that it would be available for use by both himself and Caldwell. Apparently, in 1965, the barge was taken by Boyd and tied to some trees on the river bank near a marina. On occasion, the marina owner would pump out the barge, but finally the barge sank, remaining submerged in the navigable portion of the river until it was removed by the United States in 1971. The date of the actual sinking is in dispute, District Judge Morton having fixed it as being in July, 1967, while appellants contend that it occurred in 1966. The actual date, for reasons which we will state below, is not material.

The United States first became aware of the barge's sunken condition some time in early 1968. It then made inquiries to determine the ownership of the barge, and both the previous owner, who had sold the barge, and the operator of the marina near where the barge had been tied up, advised the plaintiff that the owner was Boyd.

On December 5, 1968, the United States wrote to Boyd advising him of the provisions of the Harbor and Rivers Act, 33 U.S.C. § 401 *et seq.*, and especially as they pertain to vessels which were sunken in navigable waters. Four more letters were addressed to Boyd between February, 1969 and April, 1970, demanding that he remove the sunken barge, as it was an obstruction and hazard to navigation. As late as June 3, 1970, he advised the plaintiff that he intended to move the barge and use it as a dock. He was told to submit a plan for removal. The record is silent as to whether he actually did.

* The Honorable Charles M. Allen, District Judge for the Western District of Kentucky, sitting by designation.

In July, 1970, Boyd was advised that he was to take no further action regarding the barge, and that it would be removed and disposed of by the Government following the submission of bids and the awarding of a contract. Bids were submitted and the contract was awarded, and the barge removed and disposed of May 21, 1971, with the contractor being paid $13,415 on June 21, 1971. The Government also claimed the sum of $631 for preliminary work done in connection with the removal and disposal of the boat.

The Government filed its suit for reimbursement of its expenses on December 18, 1972 against Boyd. Subsequently, in 1973, Caldwell was made a party by an amended complaint. District Judge Morton entered his memorandum opinion after the trial of the action, finding that the United States was entitled to recover the amount of $14,046, with interest from June 21, 1971.

The first principal issue raised by the defendants was that the action was barred by 28 U.S.C. § 2415(b) which, in substance, provides that any court actions brought by the United States must be brought within three years after the right of action first accrues. Judge Morton held that the right of action did not accrue until May 21, 1971, when the total costs of removal were first established.

We believe that the pleadings, evidence and relevant statutes all must be examined, in order to determine whether the three year statute applies, or whether the six year statute set out in 28 U.S.C. § 2415(a), which pertains to any contract express or implied, in law or in fact, is applicable, or whether no statute applies.

Plaintiff's complaint alleges four causes of action. The first is based on the theory that the defendant failed to perform his statutory duty of removing the vessel, and that by reason of his failure, he was unjustly enriched by reason of the United States assuming his statutory duty and, therefore, he was obligated to reimburse and make restitution to the plaintiff.

The second cause of action is grounded in negligence, and the third cause of action is based on the theory that the obstruction constituted a public nuisance which the Government had removed and was entitled to be reimbursed for its removal. The fourth cause of action is not applicable to our determination of the issue.

Title 33 U.S.C. § 409 makes it unlawful to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels. It then states that whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the owner to so mark the craft is unlawful. The statute imposes the further duty on the owner to commence the immediate removal of the vessel and prosecute such removal diligently, with failure to do so being considered as abandonment of the vessel and, therefore, subjecting it to removal by the United States.

Title 33 U.S.C. § 414 specifically grants the United States the right to remove any sunken vessel or craft which constitutes an obstruction to its navigable waters and which has existed for more than 30 days. That statute also grants to the Secretary of the Army the right to give notice by publication in a newspaper published nearest to the locality of the obstruction.

The Supreme Court in *Wyandotte Transportation Company* v. *United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), held that the United States had the right to remove vessels which had been negligently sunken in navigable waters and to recover the cost of removal from those who caused the sinking. The Supreme Court specifically referred to § 115 of the *Restatement of the Law, Restitution*, as furnishing a basis for the recovery of its cost. Section 115 states that:

"A person who has performed the duty of another by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if

(a) he acted unofficiously and with intent to charge therefor, and

(b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety."

The elements of this section of *Restatement* are complied with here, since the statute cited above, 33 U.S.C. § 401 *et seq.*, and more particularly §§ 409 and 414, impose a mandatory duty upon the owner of the sunken vessel to remove it, and since such vessel represents a hazard to other vessels employed in navigation.

■ The right to restitution did not accrue in this case until the actual removal of the sunken barge, which occurred on May 21, 1971, and until the actual payment to the contractor, which occurred on June 21, 1971. Since the action was brought in December, 1972 against Boyd and in 1973 against Caldwell, it would not be barred by either the three year or the six year statute of limitations.

The appellants contend that if the Government is allowed to pursue the claim for recovery based on the time when it incurs its actual expense of removal, it could delay removal for many years and, thus, recover on a stale claim. The answer to this contention is that by doing so the Government would run the risk of exposing itself to liability to third parties under the authority of *Buffalo Bayou Transportation Company* v. *United States*, 375 F.2d 675 (5th Cir. 1967), and would also run the risk that the person responsible for the obstruction would be unavailable to respond in damages. Furthermore, if the Government should delay too long in removing the sunken vessel and then seek restitution, the owners of the sunken vessel could validly assert the defense of laches, inasmuch as laches would then be an equitable defense to an equitable cause of action, namely restitution.

In light of our decision that the plaintiff's cause of action is based in restitution and has a solid basis in that theory, we see no need to discuss the public nuisance theory which constitutes the third cause of action. We merely note that the Supreme Court, in dictum found in footnote 5 at p. 196 of its *Wyandotte* opinion, discussed the question of whether or not the United States had a non-statutory public nuisance right which would form the basis for relief in cases involving the removal from navigable waters of sunken vessels which are obstructions thereto.

■ Boyd contends that the right of recovery extends only as against the owner, Caldwell. While it is true that 33 U.S.C. § 409 imposes upon the owner the duty to remove the sunken vessel, there is much evidence in the record to indicate that Boyd held himself out as an owner and clothed himself with the indicia of ownership with the acquiescence of Caldwell. Also to be noted is the fact that 33 C.F.R. § 209.410, cited in *Wyandotte, supra*, provides that a person who negligently permits a vessel to sink in navigable waters of the United States may be compelled to remove the wreck as a public nuisance or pay for its removal. Judge Morton correctly found that Boyd negligently permitted the vessel to sink in navigable waters, and hence we believe was correct in affixing joint and several liability against both Boyd and Caldwell.

■ Finally, we come to the question of "notice". In that connection, Caldwell contends that it received no notice of either the sinking of the barge or of its removal. While 33 U.S.C. § 414 indicates that the giving of notice by the Government is discretionary, see *Zubik* v. *United States*, 190 F.2d 278 (3rd Cir. 1951), we believe that Caldwell should be charged with notice, since it was the actual owner who permitted Boyd to have possession and control and all indicia of ostensible ownership. Furthermore, Boyd acknowledged ownership and all inquiries indicated that he was the owner. The District Court correctly conclud-

ed that notice to Boyd should be treated as notice to Caldwell.

Finding the other points raised by the appellants' briefs to be without merit, we affirm Judge Morton's judgment.